**WORLDWIDE UNDERWRITERS INSURANCE COMPANY,**
Appellant,

v.

**Robert P. BRADY, Jr.; Robert P. Brady, Sr.; Gary Moros.**

No. 91–1620.

United States Court of Appeals,
Third Circuit.

Argued Jan. 27, 1992.

Decided Aug. 17, 1992.

Rehearing Denied Sept. 10, 1992.

Allan C. Molotsky (argued), Post & Schell, P.C., Philadelphia, Pa., for appellant.

David M. Linker (argued), Freedman & Lorry, P.C., Philadelphia, Pa., for appellee.

Before: MANSMANN, HUTCHINSON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Worldwide Underwriters Insurance Company initiated this declaratory judgment action, requesting a determination concerning the effect of its automobile policy's limitation of liability clause when members of an insured's family are involved in an accident. The district court, applying Pennsylvania law,[1] concluded that because the family limitation exclusion was both ambiguous and contrary to the reasonable expectation of the insured, the insured was entitled to the full benefits of the policy.

We will affirm the judgment of the district court, although on limited grounds. We conclude solely that the language of the exclusion is so unclear that an insured could not understand the liability limitations imposed upon its family members. Under Pennsylvania law, this vague language is construed against the policy maker and in favor of the insured.

Because we find that enforcement of this policy would be contrary to the insurance law of Pennsylvania, we need not reach the issue of whether the exclusion violates the underlying public policy and the terms of the Pennsylvania Motor Vehicle Financial

---

1. It is undisputed that Pennsylvania law applies in this action between diverse citizens.

Responsibility Law, a decision the Pennsylvania Superior Court reached in a case analyzing this identical clause.[2]

## I.

The parties filed cross-motions for summary judgment in the district court and stipulated to the following relevant facts. On or about August 28, 1989, Gary Moros sustained injuries when he was involved in a motor vehicle accident as a passenger in a car. The motor vehicle, owned by Robert Brady, Sr., his uncle, and operated by Brady's son, Robert Brady, Jr., his cousin, collided with a Philadelphia City fire truck. Seeking compensation for these injuries, Moros initiated a lawsuit in the Court of Common Pleas of Philadelphia County against Robert Brady, Sr., Robert Brady, Jr. and the Philadelphia Fire Department, alleging that all three negligently caused him personal injury. At the time of the accident and for most of his life, Moros resided with the Bradys and continues to be a household member.

At the time of the accident, Brady's vehicle was insured by Worldwide Underwriters Insurance Company. Brady had applied for a policy which included bodily injury liability limits of $100,000 per person for a total of $300,000 per accident. The insurance policy issued describes "liability coverage" as follows: "[Worldwide] will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." The declaration page, accompanying the policy mailed to Brady, reiterated the basic $100,000/$300,000 coverage Brady sought. This document, in its upper and lower left-hand corners, contained notations to indicate any "Endorsements and or/Attachments to Policy." Adjacent to this notation was a series of code numbers without explanation as to their meaning within the context of the policy.

The policy provided to Brady by Worldwide *did* contain an endorsement which is the focus of this litigation. This endorsement amended the basic $100,000/$300,000 coverage in this way:

We do not provide Liability Coverage for any person for bodily injury to you or any family member to the extent that the limits of liability for this coverage exceed the limits of liability required by the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984. (Emphasis in original.)

The inclusion of this particular clause occurred after the Insurance Department of the Commonwealth of Pennsylvania wrote to Worldwide on January 21, 1987. On that date, the Insurance Department notified all licensed insurers writing motor vehicle liability insurance in Pennsylvania that any provision of a motor vehicle insurance policy which contained an intra-family exclusion from the mandatory liability coverage would be disapproved. The companies were informed, however, that exclusion from coverage for family member liabilities, limited specifically to the minimum amount required by the Pennsylvania Motor Vehicle Financial Responsibility Law, would be approved. In response, Worldwide amended its automobile policies to conform to the Insurance Department's new requirement concerning intra-family liabilities.

The specific language of this exclusion became an issue when Brady filed a claim under the policy for coverage relevant to Moros' accident. Worldwide informed Brady by letter that, under the terms of the policy issued to him, any recovery for Moros, a "family member" as defined by the policy issued by Worldwide, was limited to $15,000, i.e., the limit of liability described

---

**2.** The Pennsylvania Superior Court recently declared the same family member limitation language at issue here as violative of the specific provisions and policy considerations of the Pennsylvania Motor Vehicle Financial Responsibility Law. *See Lambert v. McClure*, 407 Pa.Super. 257, 595 A.2d 629, 632–33 (1991) (failure to advise insured of available benefits violates no-

tice requirements of 75 Pa.Cons.Stat.Ann. §§ 1791, 1792 and is contrary to statute's policy to address problem of high numbers of uninsured motorists). We are satisfied that the Pennsylvania Supreme Court would refuse enforcement of this exclusionary clause on the grounds we have stated, so we do not reach the issues decided in *Lambert.*

in the Motor Vehicle Financial Responsibility Law. Worldwide then initiated this action, requesting the district court to declare that the liability coverage which it provided for a family member of a named insured was limited to $15,000.

Based upon a trilogy of Pennsylvania Supreme Court cases, *Tonkovic v. State Farm Mutual Auto Insurance Co.*, 513 Pa. 445, 521 A.2d 920 (1987), *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983), and, *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979), the district court found that the clause limiting recovery of a family member to the minimum liability required by the Motor Vehicle Financial Responsibility Law was unenforceable as a matter of Pennsylvania law. The court therefore granted summary judgment in favor of the insured, Brady, and against Worldwide. Worldwide has appealed to us.

As the cross-motions for summary judgment were submitted on stipulated facts, only issues of Pennsylvania law remain. Our standard of review is thus plenary. *West American Insurance Co. v. Park*, 933 F.2d 1236, 1238 (3d Cir.1991).

## II.

▆ Under Pennsylvania insurance law, if the language of an insurance policy is clear and unambiguous, an insured does not have a colorable claim against an insurer in the event of a coverage dispute on the basis that he did not read or understand the policy. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 469 A.2d at 567.

In *Standard Venetian*, the policy issued by American Empire provided liability coverage for the insured in the event of personal injury and property damage. The insurance company was also obligated to defend any suit against the insured on account of such personal injury or property damage. The policy contained an exclusion which provided that the insurance did not apply "to property damage to [Venetian's] products arising out of such products," or "to property damage to work performed by or on behalf of [Venetian] arising out of the work or any portion thereof or out of materials, parts or equipment furnished in connection therewith."

The precipitating event of the coverage dispute occurred when a portico installed for a customer of Venetian by a subcontractor collapsed during a snow storm, causing damage to the customer's property stored underneath. American Empire agreed to pay the cost of the damaged property and the cost of labor; however, it refused to defend Venetian in a contract action brought by the customer or to pay for the portico itself. The refusal rested upon the insurer's understanding that, under its policy terms, damage to Venetian's products was expressly excluded from coverage.

Venetian petitioned for declaratory judgment. The trial court, while finding that the exclusion provision was plain and free of ambiguity, relied on the then-controlling Pennsylvania Supreme Court case, *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974), to conclude that Venetian was entitled to full coverage. Under *Hionis*, Venetian was eligible for recovery because it was not aware of the policy's exclusion nor was the exclusion's meaning explained to the insured.

The Pennsylvania Superior Court affirmed, but the Pennsylvania Supreme Court reversed. The Supreme Court equated a court's refusal to enforce a contractual clause with a revision of the contract—a result greatly disfavored in the law. The Supreme Court did not, however, tread upon the maxim that when a provision of the policy is ambiguous, it will be construed in favor of the insured and against the insurer; it merely eradicated the further limitation, imposed by *Hionis*, which required the insurer to demonstrate that it had explained the meaning of the clause to the insured. *Id.* at 567. The Court reasoned that by highlighting the negotiation phase of the contract formation rather than the party's memorialized writing, *Hionis* framed the question of the scope of insurance coverage "dependent upon how a fact-

finder resolves questions of credibility." *Id.* This process concerned the Court not only because of "the obvious uncertainty of its results," but also because such an approach "would unnecessarily delay the resolution of controversy, adding only unwarranted costs to the cost of procuring insurance." *Id.* The Supreme Court then summarized its decision as follows:

> We hold only that where, as here, the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it.

469 A.2d at 567.

We note that in *Standard Venetian,* the Pennsylvania Supreme Court did not eliminate the threshold requirement that contractual provisions be clear in order to be enforced. In addition, the Supreme Court cautioned that even clearly worded written contracts are voidable if their enforcement would produce an unconscionable result:

> Although on this record we reject *Hionis,* we note that in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance. See 13 Pa.C.S. § 2302 (court may refuse to enforce contract or any clause of contract if court as a matter of law deems the contract or any clause of the contract to have been "unconscionable at the time it was made").

*Id.* Our task, then, is to determine whether under the requirements and/or restraints of *Standard Venetian,* Worldwide can enforce its family member limitation against Brady, its insured.

### III.

We begin with the question of the plain meaning of the provisions at issue.

An examination of the reams of litigation dedicated to deciphering contractual terms shows that the controversies commonly focus on the parties' conflicting interpretations of a document's provisions. In deciding these cases, the courts often pair the terms "clear and unambiguous" as synonymous. *See, e.g., Clement v. Consolidated Rail Corp.,* 963 F.2d 599, 600–01 (3d Cir. May 12, 1992), *quoting Mellon Bank N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3d Cir.1986) ("[c]ourts are left with the difficult issue of determining as a matter of law which category written contract terms fall into—clear *or* ambiguous") (emphasis added). Despite this commonplace coupling, there is a distinction, however subtle, between "unclear" and "ambiguous." While ambiguity has been described as "the condition of admitting to two or more meanings," *see Mellon Bank v. Aetna,* 619 F.2d at 1011, the question of clarity is slightly more simplistic, i.e., is the wording "easily understood?" Webster's Third New International Dictionary (unabr. 1981). Thus, before we reach the issue of whether a provision is "susceptible to two interpretations," *see Techalloy Co. v. Reliance Insurance Co.,* 338 Pa.Super. 1, 487 A.2d 820, 824 (1984), we must ask if there is *any* reasonable meaning which an insured could attach to the wording, i.e., does it satisfy the preliminary factor of clarity mandated by *Standard Venetian,* 469 A.2d at 566?

As we have outlined, the general insurance provisions contracted for, as reproduced on the declarations page of the policy, included bodily injury liability limits of $100,000 per person, $300,000 per accident. The coverage encompassed payment of damages for bodily or property damages caused by a covered person because of a car accident. The exclusion clause in the Worldwide policy, not identified on the declarations page, but contained in an amendment to the policy, limited the basic coverage as follows: "[W]e do not provide liability coverage for any person for bodily injury to you or any family member to the extent that the limits of liability for this coverage exceed the limits of liability required by the Pennsylvania Motor Vehicle Responsibility Law of 1984."

The district court, stressing that the provision did not disclose that the minimum coverage mandated by the Pennsylvania

Motor Vehicle Financial Responsibility Law was $15,000, concluded that the policy exclusion was not clear. Because of a failure to disclose the dollar amount limit, the district court concluded that the case was guided by the "exception" and not the general rule of *Standard Venetian.*

█ We agree. The imprecise wording of the clause renders it undiscernible by the insured. Considering, as we should, the document as a whole, *see Smith v. Cassida,* 403 Pa. 404, 169 A.2d 539, 541 (1961) ("policy ... must be read in entirety and the intent gathered from a consideration of the entire instrument"), we find that the exclusion does not inform the insured that full coverage for his family members was compromised. In order to be informed of the limitation imposed by this clause as the insurer intended, Brady would be compelled to travel beyond the four corners of the policy, presumably to the nearest law library or lawyer, to realize that the language of the policy, citing to the Motor Vehicle Financial Responsibility Law, imposed a $15,000 recovery of benefits cap on injuries received by family members. Pennsylvania does not place such an affirmative burden on purchasers of insurance—rather the insurer has the duty to write its policies in a clear and intelligible fashion. Because the Worldwide policy failed to explicitly inform Brady of the elements of its limited coverage, Brady is entitled to full policy benefits for the injuries incurred by his family member, Moros.[3]

## IV.

█ The further admonition of *Standard Venetian,* that enforcement of contractual provisions cannot produce uncon-

scionable results, is arguably implicated here. Unconscionability in a contract is a concept introduced under the Uniform Commercial Code and it has been applied to insurance contracts. *See Bishop v. Washington,* 331 Pa.Super. 387, 480 A.2d 1088 (1984); *Ferguson v. Lakeland Mutual Insurance Co.,* 408 Pa.Super. 332, 596 A.2d 883 (1991). Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions. *Koval v. Liberty Mutual Insurance Co.,* 366 Pa.Super. 415, 531 A.2d 487, 491 (1987). Here, although the record suggests that this contract was one of adhesion, *i.e.,* Brady's ability to procure a policy without a family member exclusion is doubtful, we are not confident that the undisputed facts, sparsely assembled here, would require such a determination. We will, therefore, not rest our decision today based upon the unconscionable result exception to the *Standard Venetian* rule.

## V.

For the reasons stated above, we will affirm the summary judgment of the district court in favor of the defendant, Robert Brady, Sr.[4]

---

**3.** Unlike the district court, we rest our decision purely on the legal pronouncement of *Standard Venetian* that unclear contractual provisions will be construed against the insurer and do not rely upon the holdings of the two Pennsylvania cases relied upon by the district court, *Collister v. Nationwide Life Ins.,* 479 Pa. 579, 388 A.2d 1346, *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1978) and *Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 513 Pa. 445, 521 A.2d 920 (1987). We believe that the holdings of these cases were firmly rooted in their

unique factual situations and decline to apply them to the facts here.

**4.** Judge Hutchinson respectfully dissents. He believes that the family member limitation clause, amended by Worldwide to conform to the requirements of Pennsylvania's Insurance Department, is sufficiently clear and unambiguous to meet the "clearly worded" standard imposed by *Standard Venetian Blind.*